IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID PAYNE and SHERRIE PAYNE, ) ) Plaintiffs, ) ) vs. ) ) SCHNEIDER NATIONAL CARRIERS, ) INC., JEFF FOSTER TRUCKING, INC., ) and TETON TRANSPORATION, INC., ) ) Defendants/Cross-Claimants. ) ) JEFF FOSTER TRUCKING, INC., ) ) Third-Party Plaintiff, ) ) vs. ) ) E.T. SIMONDS CONSTRUCTION ) COMPANY, ) ) Third-Party Defendant. ) | CIVIL NO. 09-559-GPM Consolidated with: CIVIL NO. 10-258-GPM |

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

### I. INTRODUCTION

This matter is before the Court on the motion for summary judgment brought by Defendant/Cross-Claim Plaintiff/Cross-Claim Defendant Schneider National Carriers, Inc. ("Schneider") (Doc. 68). This case arises out of a major traffic accident that occurred on April 21, 2009, on Interstate 57 in Franklin County, Illinois, near the town of Benton. According to Illinois State Policeman Robert Ventura, Jr., a certified accident reconstructionist who performed an investigation of the accident giving rise to this case, the accident was a so-called "chain reaction"

collision that happened approximately as follows. Plaintiff David Payne was traveling north on Interstate 57 when he was obliged to stop on the highway due to road construction. Thereafter, to Payne's south, a semi-truck owned and operated by Defendant/Cross-Claim Plaintiff/Cross-Claim Defendant/Third-Party Plaintiff Jeff Foster Trucking, Inc. ("Jeff Foster"), struck a semi-truck owned and operated by Defendant/Cross-Claim Plaintiff/Cross-Claim Defendant Teton Transportation, Inc. ("Teton"), from the rear, injuring Plaintiff Donald Troyer, the driver of the Teton truck. The impact of the collision between the Jeff Foster truck and the Teton truck propelled the latter truck into the rear of a semi-truck owned and operated by Schneider, with the result that the Schneider truck struck David Payne's vehicle from behind.

David Payne asserts a claim for negligence against Schneider, Teton, and Jeff Foster; his wife, Plaintiff Sherrie Payne, asserts a derivative claim for loss of consortium. Donald Troyer asserts a claim for negligence against Jeff Foster; his wife, Plaintiff Michelle Troyer, asserts a claim for loss of consortium. Schneider, Teton, and Jeff Foster each are cross-claiming against one another for contribution, and Schneider and Teton are cross-claiming against Jeff Foster for damage to their trucks and the cargo thereof caused by the accident. Additionally, Jeff Foster has impleaded Third-Party Defendant E.T. Simonds Construction Company ("Simonds"), the firm that was performing the highway construction on Interstate 57 that caused David Payne to stop on the road on the day of the accident giving rise to this case, demanding contribution from Simonds. Schneider now has moved for summary judgment. Mr. and Mrs. Payne have filed a response brief in opposition to Schneider's summary judgment motion, as has Jeff Foster. Having reviewed carefully the submissions of the parties and conducted a hearing on Schneider's summary judgment motion, the Court now rules as follows.

## II. ANALYSIS

As an initial matter, the Court notes the well-established standard under which it must evaluate a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). The rule provides further that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In considering a summary judgment motion, a court must review the entire record and draw all reasonable inferences in the light most favorable to the non-moving party. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Enquip, Inc. v. Smith-McDonald Corp.*, 655 F.2d 115, 118 (7th Cir. 1981). *See also Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010) (citing *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)) ("We construe all facts in the light most favorable to [the non-movant] and draw all reasonable inferences in his favor."). On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See Morfin v. City of E. Chicago*, 349 F.3d 989, 999 (7th Cir. 2003); *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1138 (7th Cir. 1994). In evaluating a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). With the foregoing standard in mind, the Court turns to an evaluation of Schneider's motion for summary judgment.

In Schneider's motion for summary judgment, the carrier argues that its truck was stopped at the time of the accident giving rise to this case and thus, as a matter of law, Schneider's truck was merely a condition, not a cause, of David Payne's injuries. Additionally, Schneider contends that it could not have caused the accident because the force with which Jeff Foster's truck hit Teton's truck was sufficient to propel the latter into Payne's car even if the Schneider truck had not been present at the accident scene at all. In response Mr. and Mrs. Payne point out that, even if the driver of the Schneider truck came to a complete halt without striking David Payne's car shortly before the Jeff Foster truck collided with the Teton truck, causing the Teton truck to push Schneider's truck into Payne's car, this does not exclude possible liability for Schneider under the so-called "sudden stop" doctrine. Under Illinois law, "[g]enerally, a motorist intending to stop or suddenly slow down his vehicle must use due care for his own safety and for the safety of others, such as other vehicles following so closely behind him that they may be imperiled by a sudden stop," and "a sudden slowing up may amount to a practical stop so as to require the same precautions as would be necessary in case of an actual stop." *Mernick v. Chiodini*, 139 N.E.2d 784, 787 (Ill. App. Ct. 1956). *See also* 625 ILCS 5/11-804(c) (prohibiting a motorist from stopping or suddenly decreasing vehicle speed without giving an appropriate signal, whenever possible, to any vehicle immediately to the rear); *Carter v. Williams*, 361 F.2d 189, 192 (7th Cir. 1966) ("[I]n Illinois it is negligence as a matter of law to drive an automobile at such a rate of speed that it cannot be stopped in time to avoid collision with an object discernible within the driver's length of vision ahead of him."); *Joseph v. Schwartz*, 422 N.E.2d 35, 39-40 (Ill. App. Ct. 1981) (where vehicles are traveling in the same direction, the operator of the forward or lead vehicle must exercise ordinary care to prevent injury to vehicles that may be following); *Morse v. Johnson*, 401 N.E.2d 654, 656 (Ill. App. Ct. 1980)

("While it is not always negligent to stop a vehicle on the highway, or even to stop a vehicle abruptly on the highway, the sudden or abrupt stopping of a vehicle on the roadway where traffic conditions are heavy, without justification or because of inattentiveness, can, under such circumstances, constitute . . . negligence."); *Ryon v. Javior*, 387 N.E.2d 936, 942 (Ill. App. Ct. 1979) ("[A] driver who stops suddenly without warning may be negligent and liable to the driver of an automobile behind him.").

Just as a motorist is expected to use reasonable care in slowing and stopping, so, in addition, "[w]hen faced with a sudden emergency or imminent peril, the driver of an automobile must exercise that degree of care and caution which an ordinarily prudent and careful person would exercise under the circumstances." *Apcon Corp. v. Dunn*, 562 N.E.2d 386, 388 (Ill. App. Ct. 1990) (quoting *Ball v. Continental S. Lines, Inc.*, 360 N.E.2d 81, 83 (Ill. App. Ct. 1976)). *See also Graf v. Ford Motor Co.*, 243 N.E.2d 337, 340 (Ill. App. Ct. 1968) (a motorist confronted by an emergency "is required to exercise such care, or choice of conduct, as an ordinarily or reasonably prudent man would exercise when confronted by a like emergency[.]"). Both David Payne and Donald Troyer have testified at their depositions that, immediately before the accident giving rise to this case, they saw smoke coming from under the Schneider truck in the area of the truck's wheels, suggesting that the Schneider truck's brakes were locked and the truck was stopping under emergency conditions; if so, it is possible that the Schneider truck made an unsafe stop that proximately contributed to the accident. Also, as Mr. and Mrs. Payne note, proximate causation ordinarily is a question of fact for a jury. *See Lee v. Chicago Transit Auth.*, 605 N.E.2d 493, 502 (Ill. 1992) ("Questions concerning . . . proximate cause are factual matters for the jury to decide."); 4A Illinois Law & Practice *Automobiles & Motor Vehicles* § 181 (1956 & Supp. 2009) ("The question of proximate

cause in an automobile accident case ordinarily is not a question of law, but a question of fact, or a mixed question of law and fact for the jury, or, in the absence of a jury, for the trial court.") (footnotes omitted) (collecting cases).[1]

In opposition to Schneider's summary judgment motion, Jeff Foster vigorously disputes Trooper Ventura's account of the April 21 accident, contending that in fact Schneider's truck hit David Payne's car before Jeff Foster's truck collided with Teton's truck, thereby pushing the Teton truck into the Schneider truck. In support of its position, Jeff Foster proffers the expert opinion of John Goebelbecker, a mechanical engineer and professional accident reconstructionist. Goebelbecker differs with the factual findings of Trooper Ventura regarding how the accident happened. In Goebelbecker's opinion, the physical evidence at the scene of the crash is consistent with an impact between Schneider's truck and David Payne's car prior to any impact between Jeff Foster's truck and Teton's truck. Goebelbecker concludes that Trooper Ventura and other police at the accident scene failed to consider reasonable alternative scenarios about how the accident happened, relying instead merely on the testimony of Payne, Donald Troyer, and Dale Stumbo, who was driving the Schneider truck at the time of the accident. In support of his opinion, Goebelbecker relies upon a photograph taken at the scene of the accident by Jackie McPherson, a reporter for television station WSIL, shortly after the accident occurred. The photograph shows Payne's car, the Teton truck, and the Schneider truck at rest in positions different from the final post-crash positions

---

1. It is true, of course, that the allocation of responsibilities between the finder of law and the finder of fact in federal court is governed by federal law. *See Houben v. Telular Corp.*, 231 F.3d 1066, 1072 (7th Cir. 2000) (citing *Mayer v. Gary Partners & Co.*, 29 F.3d 330, 333-35 (7th Cir. 1994)); *Kremers v. Coca-Cola Co.*, Civil No. 09-333-GPM, 2010 WL 1707061, at *5 n.5 (S.D. Ill. Apr. 27, 2010). However, the Illinois state authorities cited above point up the important principle that, in numerous cases, it will be impossible for a court to establish proximate causation, or lack thereof, as a matter of law.

assigned to those vehicles in Trooper Ventura's report on the accident. The photograph serves, obviously, to undercut the authority of Trooper Ventura's accident report and to cast doubt on the report's accuracy. Trooper Ventura's report, Goebelbecker contends, was prepared using only the statements of Payne, Troyer, and Stumbo, rather than by making measurements at the scene of the accident. Additionally, Goebelbecker contests Trooper Ventura's conclusion that certain tire gouge marks on Interstate 57 are attributable to Jeff Foster's truck and attributes them instead to either Teton's truck or Schneider's truck, suggesting that there were dangerous driving conditions on Interstate 57 before Jeff Foster's truck made contact with another vehicle. As Goebelbecker points out, Trooper Ventura concedes that he cannot rule out Goebelbecker's account of how the accident occurred.

To the extent Goebelbecker's opinion is based upon the report of Martin Leffler, the coroner of Franklin County, regarding the death of Lawrence Rich, who was driving the Jeff Foster truck on the day of the accident giving rise to this case and who was killed in a post-collision fire, the Court is not inclined to consider the opinion. The Leffler report is hearsay, of course, meaning that it "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). In general, "[h]earsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed. R. Evid. 802. Nevertheless, Leffler's account of the physical cause of Rich's death is admissible into evidence under the exception to the hearsay rule for public records and reports. *See* Fed. R. Evid. 803(8). *See also Blake v. Pellegrino*, 329 F.3d 43, 47-48 (1st Cir. 2003) (finding that the portion of a death certificate stating the cause of death is admissible under the Federal Rules of Evidence); *Burton v. Johns-Manville Corp.*, 613

F. Supp. 91, 93 n.2 (W.D. Pa. 1985) (same). Moreover, Goebelbecker, as an expert witness, can base his opinions on inadmissible hearsay evidence, provided that the evidence is of the type "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject[.]" Fed. R. Evid. 703. *See also United States v. Gardner*, 211 F.3d 1049, 1054 (7th Cir. 2000) (an expert was permitted to base opinion as to the cause of a fire on photographs and reports); *United States v. Lundy*, 809 F.2d 392, 395-96 (7th Cir. 1987) (the trial court did not err in permitting an expert to testify that a fire was incendiary in origin where the expert's opinion was based on hearsay, given that "interviews with many witnesses to a fire are a standard investigatory technique in cause and origin inquiries."); *Johnson v. Consolidated Rail Corp.*, 797 F.2d 1440, 1446-47 (7th Cir. 1986) (in an action arising from a collision between a truck and a train, the trial court did not err in permitting experts to base their testimony on hearsay information); *Baumholser v. Amax Coal Co.*, 630 F.2d 550, 553 (7th Cir. 1980) (in an action alleging that blasting operations at a coal mine damaged the plaintiff's home, an expert was properly permitted to rely on hearsay in giving an opinion as to the proximate cause of the damage); 29 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure § 6274 (3d ed. 1998 & Supp. 2009) ("[E]xperts generally have been permitted to base their opinions on hearsay and other inadmissible evidence where giving opinions . . . [as to] the cause or circumstances of an accident[.]") (collecting cases). Here, the Leffler report likely is hearsay evidence of the type upon which an expert would rely; for example, Trooper Ventura, who is, as already has been noted, a professional accident reconstructionist, testified that had he been aware of the Leffler report when he was preparing his own report about the April 21 accident, he would have considered the Leffler report in arriving at his findings.

However, while Rule 703 permits an expert to base an opinion or inference on hearsay, the rule provides also that "[f]acts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. *See also* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). Leffler's report suggests, based on information furnished to Leffler by police at the accident scene, that Schneider's truck hit Payne's car, then Teton's truck hit Schneider's truck and was hit in turn by Jeff Foster's truck:

> Traffic accident on Interstate 57 Northbound near mile marker 74 ½, just North of the Northbound rest area. Three semi-trucks and a Chevrolet Avalanche were involved. First semi and Chevrolet Avalanche got together, then the second semi ran into the rear of the first semi, and then the third semi ran into the back of semi number two.

Doc. 106-8 at 1. Leffler freely admits that he has no personal knowledge of how the accident occurred and that his account of the accident in his report is based on hearsay statements from police officers at the accident scene. The mere fact that hearsay evidence is included in Leffler's official report regarding the cause of Lawrence Rich's death does not ipso facto render that evidence admissible for purposes either of summary judgment or trial. *See United States v. Mackey*, 117 F.3d 24, 28 (1st Cir. 1997) ("[D]ecisions in this and other circuits squarely hold that hearsay statements by third persons . . . are not admissible under [Rule 803(8)] merely because they appear within public records."); *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) (quoting *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983)) ("It is well established that entries in a police report

which result from the officer's own observations and knowledge may be admitted *but that statements made by third persons under no business duty to report may not*.") (emphasis in original); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."). Likewise, hearsay is not rendered admissible merely because it is included in Goebelbecker's expert report. *See Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1270-71 (7th Cir. 1988) (holding that it is not the case "that Rule 703 supersedes Rule 403" and that evidence that is not barred by the hearsay rule nonetheless may be barred on the grounds that its probative value is outweighed by its prejudicial effect if admitted); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 328 & n.12 (N.D. Ill. 2008) (noting that Rule 703 "is not an exception to the hearsay rule" and in fact the rule "points in the opposite direction, for it prohibits disclosure by the proponent of the evidence to the jury of the inadmissible bases that underlie an expert's opinion"); 29 Wright & Gold, Federal Practice & Procedure § 6273 ("Rule 703 does not authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them to the jury.") (collecting cases). In the Court's opinion, the prejudicial effect and potential for jury confusion that would result from admitting into evidence Leffler's opinion about how the accident occurred vastly outweighs its probative value. Therefore, the Court does not consider the portion of Goebelbecker's opinion based on the account of how the May 21 accident occurred that is contained in the Leffler report.

The Court concludes that there are genuine issue of material fact for trial with respect to Schneider's liability for the accident giving rise to this case. As discussed, there is testimony from both David Payne and Donald Troyer suggesting that the Schneider truck was making an emergency

stop at the time of the accident, so that the truck's sudden stop may have proximately contributed to the collision that followed. Additionally, a grant of summary judgment for Schneider necessarily would involve making a determination about the credibility of John Goebelbecker's expert opinions that the Court is not in a position to make. *See Wilson v. Williams*, 997 F.2d 348, 350 (7th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."); *Black v. Lane*, 824 F.2d 561, 562 (7th Cir. 1987) (citing *Hawkins v. Poole*, 779 F.2d 1267, 1269 (7th Cir. 1985)) ("Credibility normally cannot be determined by summary judgment."); *Malone v. TCT Ministries, Inc.*, Civil No. 08-467-GPM, 2009 WL 4068011, at *4 n.3 (S.D. Ill. Nov. 24, 2009) (on summary judgment, declining to evaluate a witness's motives for testifying in the manner that he had done and thus the credibility of the witness's testimony). The Court notes that it considers Trooper Ventura's account of how the accident happened more credible than Goebelbecker's account of the accident, as well as more consistent with the weight of the evidence. However, the Court is not sitting as the trier of fact at this juncture. Short of holding that Goebelbecker's evidence is inadmissible under Rule 702 of the Federal Rules of Evidence, which the parties have not argued and which does not appear to be the case, the Court sees no way that it can sidestep Goebelbecker's opinions and give summary judgment for Schneider. In effect, a grant of summary judgment for Schneider under these circumstances would require the Court to decide how the accident giving rise to this case happened and to prevent Jeff Foster from arguing at trial that the accident happened in a different way. Accordingly, the Court must deny summary judgment.

### III. CONCLUSION

For all of the foregoing reasons, Schneider's motion for summary judgment (Doc. 68) is **DENIED**.

**IT IS SO ORDERED.**

DATED: August 30, 2010

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge